IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| PAUL DIGEROLAMO | Civil No. 11-6006 (RBK/JS) |
| Plaintiff, | **OPINION** |
| v. |  |
| CHARLES E. GALE, et al., |  |
| Defendants. |  |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the motion of Cheyenne's Pilot Cars, Inc. ("Cheyenne") for summary judgment, pursuant to Federal Rule of Civil Procedure 56, and upon the cross-motion for summary judgment of Paul DiGerolamo ("Plaintiff").[1]  Cheyenne seeks summary judgment on the issue of its liability for Plaintiff's personal injuries, and Plaintiff's cross-motion relates to the issue of vicarious liability against Cheyenne.  For the reasons expressed herein, Cheyenne's motion will be **GRANTED**, and Plaintiff's cross-motion will be **DISMISSED AS MOOT**.

**I.     BACKGROUND**

This action arises from a vehicular collision on June 20, 2011, between a vehicle driven by Plaintiff, and a tractor-trailer driven by Charles Gale.  Def. Statement of Undisputed Material Facts ¶ 1.  Gale was to make a delivery from Baltimore Aircoil in Milford, Delaware, to the

---

[1] Antoinette DiGerolamo is also named as a Plaintiff, but because her claim is limited to loss of consortium, this Opinion refers to Paul DiGerolamo when using the term "Plaintiff."

Revel Hotel construction site in Atlantic City, New Jersey. Id. ¶¶ 7, 11. The owner of the tractor-trailer, Admiral Merchants Motor Freight ("Admiral") obtained a New Jersey Trip Permit for the route to be taken by Gale. Id. ¶ 9. Admiral also contracted with Cheyenne to provide an escort driver for Gale's tractor-trailer. Cheyenne is in the business of supplying escort vehicle services, or "pilot cars" for oversized vehicles. Id. ¶ 2. Cheyenne assigned John Hodanics to serve as Gale's escort driver, pursuant to an independent contractor agreement between Cheyenne and Hodanics. Id. ¶ 3. Although a pilot car was required for the portion of the trip in Delaware, New Jersey law did not require an escort for the tractor-trailer operated by Gale. Id. ¶ 12. Nonetheless, Gale requested that after crossing the Delaware/New Jersey border, Hodanics remain with him as an escort to his destination in Atlantic City. Id. ¶ 16. At the time of the accident, Gale's tractor-trailer was travelling North on Martin Luther King Boulevard in Atlantic City, crossing Route 30. Id. ¶ 18. Hodanics' vehicle was behind Gale's vehicle and to the left of it as they proceeded through the intersection. Pl. Counterstatement of Facts, ¶ 40. The plaintiff, Paul DiGerolamo, was travelling westbound on Route 30 prior to the collision between his vehicle and Gale's tractor-trailer in the intersection. Id. ¶ 89. An eyewitness testified that Gale's vehicle was blocking the intersection when the light changed to green for traffic on Route 30, and a collision occurred between Plaintiff's vehicle and Gale's tractor-trailer. Id. ¶ 84.

  Plaintiff initially filed suit for personal injuries against Gale and Admiral in the Superior Court of New Jersey Law Division, Atlantic County. Admiral then removed the case pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Then, in his First Amended Complaint, he included allegations against Cheyenne and Hodanics. Gale and Admiral have settled their claims with Plaintiff, and now Cheyenne moves for summary judgment on the claims against it.

2

## II. LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting First National Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. Id. at 255; Matsushida, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. Anderson, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in its favor. Id. at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Cheyenne argues that summary judgment should be granted because there is no evidence in the record that could lead a fact-finder to conclude that it owed a duty to Plaintiff and breached that duty. Because the existence of a duty and breach of that duty are both essential elements in a negligence claim, Plaintiff must show that a material issue of fact exists as to these elements in order to defeat summary judgment. See Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008) (indicating that a plaintiff in a negligence claim must show (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) damages).[2] Plaintiff has failed to establish any breach of a duty owed to him by Hodanics and Cheyenne. Further, he fails to demonstrate an issue of material fact that could lead a jury to find that Hodanics' actions as the pilot car operator proximately caused the collision. These issues are considered in turn.

### A. Expert Testimony Required

The hallmark of breach of a duty of care is reasonableness. Where the breach of duty is based on subject matter that is within the realm of common knowledge and judgment, jurors can form their own conclusions about the negligence of a defendant without specialized testimony from an expert witness. See Mathis v. Pomerentze, Civ. No. 08-6129, 2012 WL 6152126, at *2 (D.N.J. Dec. 11, 2012) (citing Hubbard v. Reed, 774 A.2d 495, 501 (N.J. 2001)). However, in tort actions, where the matter "is so esoteric that jurors of common judgment and experience cannot form a valid judgment" about whether a party's conduct is reasonable, expert testimony is

---

[2] The parties assume that New Jersey law governs, and, indeed, it is the substantive law of New Jersey that the Court applies here. Federal Courts sitting in diversity "determine which state's substantive law applies by applying the choice-of-law rules of the jurisdiction in which the court sits." Garcia v. Plaza Oldsmobile LTD., 421 F.3d 216, 219 (3d Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). New Jersey follows the Restatement (Second) of the Conflict of Laws, which indicates that a matter is governed by the law of the state with the "most significant relationship" to the issue before the court. P.V. v. Camp Jaycee, 197 N.J. 132, 141 (2008). Here, the parties point to no state other than New Jersey whose laws would potentially apply to this matter. Plaintiff lives in New Jersey and this lawsuit arose out of an accident that occurred in Atlantic City, New Jersey. The Court, therefore, applies New Jersey law, as that state bears the most significant relationship to the issues now before it.

4

required to describe what the standard of care is for a particular activity, and why the party in question failed to meet that standard of care. Phillips v. Gelpke, 190 N.J. 580, 591 (2007) (citations omitted).

Here, in order to establish a duty of care owed by Cheyenne, and a breach of that duty, Plaintiff needs the jury to consider the standard of care required for a pilot car operator and whether the actions of Hodanics as an escort driver breached those duties. Plaintiff argues that this can be done without expert testimony because this "matter is an ordinary negligence action stemming from a motor vehicle accident." Pl. Opp'n at 7. He also argues that the duty owned by Hodanics to third parties is "the same duty owed by every driver operating on public highways in New Jersey. Id. at 6. The Court cannot accept this analysis. The vehicle operated by Hodanics did not collide with Plaintiff's vehicle, and thus Plaintiff can point to no breach of any duty connected with the direct operation of his vehicle. Rather, the standard of care is that owed by a reasonable pilot car operator. A defendant rendering services in the course of a profession or trade "is required to exercise the skill and knowledge normally possessed by members of that profession in good standing in similar communities." Levine v. Wiss & Co., 97 N.J. 242, 246 (1984) (citing Restatement (Second) of Torts § 299A). This rule has been held applicable in New Jersey courts to pharmacists, fire insurance brokers and karate instructors, in addition to professionals such as doctors, dentists, and lawyers. See id; Fantini v. Alexander, 172 N.J. Super. 105, 108 (App. Div. 1980). Certainly, it applies to pilot car escorts as well.

When hazards are "commonplace and ordinary," an expert witnesses is not required to explain their danger to a jury, even where the duty relates to persons in a particular trade or profession. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 450 (1993). Traffic accidents are generally ordinary enough, and not so esoteric, that expert testimony is not required. Because a

5

large segment of the public drives motor vehicles, they can normally be expected to decide whether a driver has breached the standard of care for operating a motor vehicle or responding to hazards that develop on roadways. Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996); see also Lentino v. Fringe Emp. Plans, 611 F.2d 474, 482-83 (3d Cir. 1979) (expert testimony is not required when the matter before the jury is "within the range of the ordinary experience and comprehension of non-professionals."). However, where some other element besides ordinary negligence by the driver of a vehicle is involved, courts have routinely required expert testimony. For example, a theory that the cause of an accident related to defective brakes was barred without expert testimony, even where a lay witness testified about observing brake fluid and a worn brake pad. Wyatt by Caldwell v. Wyatt, 217 N.J. Super. 580, 591 (App. Div. 1987). The Third Circuit held that expert testimony was required to survive summary judgment on a negligent failure to test claim, where a defect in the design of a Ford vehicle was alleged by the plaintiff in connection with a car accident. Oddi v. Ford Motor Co., 234 F.3d 136, 159 (3d Cir. 2000).

A case that is even more on point is Giantonnio v. Taccard, 291 N.J. Super. 31 (App. Div. 1996). In that case, a participant in a funeral procession struck the plaintiff's vehicle, which was not involved in the funeral procession. Id. at 36. The plaintiff sued both the driver operating the vehicle that struck her, as well as the funeral home which had organized the funeral procession. Id. The New Jersey Appellate Division held that "expert testimony regarding [the funeral home's] standard of care and breach of that standard was critical to the viability" of the plaintiff's case against the funeral home and its employees. Id. at 43. The court held that "the safe conduct of a funeral procession constitutes a complex process involving assessment of a myriad of factors such as traffic conditions, particular road hazards, the length of the procession,

time constraints, the distances involved, traffic volume and the availability of police escort services." Id. at 44. The court found that this complexity put the assessment of the standard of care owed by a funeral procession organizer "beyond the ken of the average juror." Id.

The Court is skeptical that lay persons know what the duties expected of a pilot car driver are, and is persuaded by the reasoning of the Giantonnio case, which is instructive as to whether expert testimony is necessary here. Similar to a funeral procession, Plaintiff here seeks to hold a party liable who was not directly involved in the collision, but rather, at most, responsible for providing guidance to the person who did collide with the plaintiff. The complexity of the pilot car escort process is evident from the "Pilot Car Escort Training Manual" discussed in the next section, which consists of over fifty-five pages, exclusive of appendices. See Pl. Opp'n Ex. H. The Court believes that the duties attendant to escorting a tractor-trailer with a pilot car are just as far, if not further, "beyond the ken" of an average juror than the standard of care for safely organizing a funeral procession. Giantonnio, 291 N.J. Super. at 44.

Plaintiff's theory is that Hodanics failed to adequately review the route with Gale prior to departure, did not check for a safer route for Gale to take, and failed to alert Gale about the potential dangers of a turn onto Route 30. Pl. Opp'n at 11. These issues would all require expert testimony from someone in the trucking industry who can testify about the processes typically employed by pilot car escorts. Although Plaintiff has produced two expert witnesses, neither expert indicates anything in his report about the standard of care owed by a pilot car operator. See Mot. Summ. J., Exs. I, J.

### B. Industry Manuals as a Substitute for Expert Testimony

Plaintiff further argues that to the extent a demonstration of the industry standard of care for pilot car operators is necessary, he satisfies this requirement through the identification of two

7

publications by the Specialized Carriers & Rigging Association, with cooperation and funding from the United States Department of Transportation and the Federal Highway Administration.[3] The publications are entitled "Pilot Car Escort Training Manual" and "Pilot Car Escort: Best Practices Guidelines." See Pl. Opp'n Exs. H, I. Plaintiff's theory is that these publications (the "Pilot Car Manuals") demonstrate the standard of care in the pilot car industry, and Plaintiff will attempt to show that Hodanics breached certain standards as set forth in the manuals. Plaintiff proposes that he will introduce the Pilot Car Manuals through Hodanics, a defendant, or through Kay Phipps, a co-owner of Cheyenne, both of whom he indicates may be qualified as expert witnesses. Pl. Opp'n at 9, Ex. A at 7:13-18.

Although the Pilot Car Manuals may be admissible at trial, Plaintiff has pointed to nothing in the record indicating that these publications set forth the standard of care in the pilot car industry. They do not purport to be regulations or any other kind of standards, and no witness has identified them as authoritative, or as standards of care. In fact, Cheyenne indicates that it learned for the first time that Plaintiff intended to rely on these documents after discovery was complete, so evidently no witness testified about the Pilot Car Manuals. See Cheyenne Reply at 2. Further, as Cheyenne observes, the complexity of the publications themselves suggests a need for expert testimony in order to set forth a true standard of care. For example, Plaintiff points to a section of the "Best Practices Guidelines" publication that indicates that as a component of pre-trip planning, a pilot car driver should review the entire route and "identify alternate routes as necessary." Pl. Opp'n Ex. I, at 9. Although it appears that Plaintiff's theory is

---

[3] A review of the publications does not support the characterization by Plaintiff that they are "published by the Federal Highway Administration in conjunction with the Specialized Carriers & Rigging Association." Pl. Opp'n at 8. The "Best Practices Guidelines" publication clearly indicates that the "Specialized Carriers and Rigging Association . . . . prepared these guidelines. Id., Ex. I, at 7. It also indicates that the Federal Highway Administration's "participation in the publication of this document does not constitute an endorsement of any private interest." Id., Ex. I, at 2. The Training Manual document contains similar language. Id., Ex. H, at 4.

based in part on an inadequate review of the route by Hodanics, the Pilot Car Manuals do not explain when it would be "necessary" to identify alternate routes, and whether Hodanics should have done so in this case. Further, in every case cited by Plaintiff in support of its argument that the Pilot Car Manuals establish a standard of care, the publications at issue were offered in connection with expert testimony, and not alone. See Elledge v. Richland/Lexington Sch. Dist. Five, 341 S.C. 473, 479 (S.C. Ct. App. 2000); McComish v. DeSoi, 42 N.J. 274, 282 (1964) ("a safety code . . . is not introduced as substantive law," but "provides support for the opinion of the expert concerning the proper standard of care.").

The Court thus rejects Plaintiff's assertion that he has demonstrated the appropriate standard of care through the introduction of best practice and training documents. Courts have frequently rejected attempts of parties to introduce such materials as a substitute for expert testimony. See Adamski v. Moss, 271 N.J. Super. 513, 519 (App. Div. 1994) (rejecting attempt to use "medical/legal textbooks" to establish the standard of medical care in performing an operation); Morlino v. Med. Ctr. of Ocean Cnty., 295 N.J. Super. 113, 123 (App. Div. 1996) (indicating that the "Physician's Desk Reference" publication could be considered "along with expert testimony to determine the appropriate standard of care," but was "not designed per se to establish a medical standard of care") (emphasis in original); Canesi v. Wilson, 158 N.J. 490, 511 (1999) (the Physician's Desk Reference "is not, of itself, sufficient evidence to establish a standard of care."); Hall v. Johnson & Johnson, Civ. No. 03-5153, 2006 WL 1096940, at *4 (D.N.J. Apr. 25, 2006) ("'credible medical literature' . . . is an insufficient substitution for the testimony of an expert.").

Neither can Plaintiff defeat summary judgment by proposing to rely on the testimony of defense witnesses to establish the standard of care set forth in the Pilot Car Manuals. See Pl.

Opp'n at 9. This could result in a failure of Plaintiff's prima facie case under Fed. R. Civ. P. 50, if he waited until Hodanics and Phipps took the stand as defense witnesses. See Tyndall v. Zaboski, 306 N.J. Super. 423, 429 (App. Div. 1997). A party cannot defeat summary judgment "in the mere hope cross-examination of an adverse witness will support their claims." Langer v. Dista Prods. Co., Civ. No. 90-4598, 1996 WL 526763, at *2 (N.D. Ill. Sept. 12, 1996) (citing 10A Charles A. Wright et al., Federal Practice and Procedure § 2741 (2d ed. 1983)). Even if Plaintiff's argument is interpreted to suggest that he will call Hodanics or Phipps in his case-in-chief, nothing in the record from either of these witnesses suggests that they would testify that the Pilot Car Manuals establish a standard of care in the industry. Speculation that such evidence might be adduced at trial is not sufficient to overcome summary judgment. See Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002) ("A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial.") (citations omitted).

Plaintiff correctly points out that in the Third Circuit, evidence can be considered on a motion for summary judgment if it is capable of being admissible at trial. See Pl. Opp'n at 9 (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1235 n.9 (3d Cir. 1993)). However, Plaintiff has cited no law that suggests that speculation as to what an opposing party might testify to is sufficient to withstand summary judgment. While the Pilot Car Manuals may be properly considered by the Court in connection with this summary judgment motion, the idea that some witness might testify that the Pilot Car Manuals establish the standard of care for the pilot car industry does not rise above speculation.

Plaintiff can point to nothing in the record that establishes that the Pilot Car Manuals establish a standard of care. Under Federal Rule of Procedure 56, a party opposing summary

judgment must come forward with admissible evidence supporting its claim. Matsushita, 475 U.S. at 587. Thus, Plaintiff's argument that he hopes that Hodanics or Kay Phipps will establish matters upon which Plaintiff has the burden of proof must fail. Fed. R. Civ. P. 56. Nothing in the summary judgment record provides evidence regarding the standard of care for pilot car drivers, or breach of that duty.

### C. Prima Facie Case of Liability

Cheyenne's summary judgment motion must also be granted because Plaintiff has not set forth facts establishing the existence of genuine issues in dispute, based on which a jury could conclude that Hodanics or Cheyenne is liable for the accident. Plaintiff argues that there is an issue of material fact as to whether Hodanics breached his duty of care leading up to the accident. However, it is unclear exactly what Plaintiff believes Hodanics did wrong. He alleges that Hodanics did not discuss the route with Gale in adequate detail before they left their origin point. Pl. Opp'n at 13. But it is unclear how further discussion of the route would have prevented the accident, and Plaintiff does not explain the causal link between this alleged failure and the accident.

Plaintiff also claims that because the testimony of Gale and Hodanics conflicts with that of other witnesses, an issue of material fact exists. Gale testified that he was proceeding across the intersection of Route 30 and never intended to attempted to make a turn onto Route 30 or had to maneuver his tractor-trailer in reverse. Pl. Opp'n Ex. B, 14:17-15:23. Hodanics' testimony was in conformity with Gale's. Id. Ex. C, 30:11-15, 41:12-17. On the other hand, a witness testified that Gale tried to make a turn onto Route 30, but had difficultly navigating the turn, and had to put his vehicle in reverse. Id. Ex. E, 11:9-22. While there certainly is an issue of material fact as to whether Gale tried to navigate a turn, this does not explain what duty Hodanics

11

allegedly breached, or how Hodanics could have done anything to prevent the accident, even assuming that Gale attempted to turn at the intersection or had to put his vehicle in reverse.

The remainder of the alleged disputes of material fact are not, in fact, material. For example, Plaintiff takes issue with the fact that Hodanics was not aware at his deposition that Route 30 is also known as the White Horse Pike, that at the time of his deposition he could not recite the directions from the accident scene to their ultimate destination, and that he was not aware of whether a city permit existed in addition to a New Jersey state permit. Pl. Opp'n at 14-15. Plaintiff is grasping at straws by advancing these arguments. Plaintiff does not explain how Hodanics' lack of knowledge about any of these issues is causally connected to the collision between Gale and DiGerolamo.

### D. Plaintiff's Cross-Motion

For the reasons set forth in this Opinion, Plaintiff's cross-motion seeking to establish that Cheyenne is vicariously liable for the actions of Hodanics is rendered moot.

### IV. CONCLUSION

For the reasons stated herein, Cheyenne's motion will be **GRANTED**, and judgment will be entered in its favor. Plaintiff's cross motion will be **DISMISSED AS MOOT**. An accompanying Order shall issue.

Dated: 02/07/2014          /s/ Robert B. Kugler
                           ROBERT B. KUGLER
                           United States District Judge